J-A22035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LEVY BALDANTE FINNEY & RUBENSTEIN, P.C. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 3241 EDA 2016 |
| WELLS FARGO BANK, N.A. AND TD BANK, N.A. | : | |

Appeal from the Order Entered September 14, 2016
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  001575 June Term 2015

BEFORE:   BOWES, J., LAZARUS, J., and PLATT*, J.

CONCURRING MEMORANDUM BY BOWES, J.:   **FILED FEBRUARY 14, 2018**

I am constrained to concur in the result reached by my learned colleagues.  Herein, the record establishes that, although images of both the fronts and backs of Appellant's checks were available online for viewing by Appellant's controller, she did not examine them unless the statement and the account could not be reconciled.  On the one occasion when the bank rejected Appellant's check because the endorsement did not match the name of the payee, the controller recognized the handwriting on the back of the check as that of Mr. Cohen.  Thus, there is record evidence that supports the trial court's finding that Appellant's controller reasonably could have detected Mr. Cohen's unauthorized endorsements on the other checks had she examined them.  Since prompt detection and reporting could have averted successive losses caused by the same wrongdoer, I can accept the result herein.

_____

*   Retired Senior Judge assigned to the Superior Court.

Nonetheless, I believe that in many cases it would be difficult, if not impossible, for the customer to detect an improper or forged endorsement, even with access to a copy of both the front and back of a check. In those instances, the question whether the unauthorized endorsement or forgery should reasonably have been discovered by the customer with the information made available by the drawee bank would constitute a material issue of fact that would preclude entry of summary judgment.

I write separately to express my consternation that Wells Fargo, the depository bank in this case, did not conduct even a rudimentary scrutiny of the checks deposited by Mr. Cohen in its ATMs ("automated teller machine"). On twenty-nine occasions, Mr. Cohen utilized a Wells Fargo ATM to deposit into his own Wells Fargo account checks payable to another, but which he blatantly endorsed in his own name. The depository bank admitted that its policy was not to compare the signature of the endorser to the name of the payee for any check under $50,000 deposited in its ATMs. Yet, despite that policy, the depository bank repeatedly warranted to the drawee, TD Bank, that the special endorsements were signed by the payee. TD Bank relied upon that warranty of presentment to debit Appellant's account. There was no risk to TD Bank in doing so because the depository bank must defend and indemnify the drawee for any breach of its presentment warranties. The drawee's thirty-day notice requirement in its deposit contract with its customer further reduced the exposure of the indemnitor to liability.

Having been required on numerous occasions to produce identification to a teller when cashing or depositing a check, it is disconcerting to this writer to learn that at least one major bank had abandoned any pretense of ensuring that ATM-deposited checks were similarly scrutinized. It is unclear from the record whether the policy of not comparing the payee and the endorser on any check less than a certain dollar amount deposited in an ATM is industry wide. Had there been evidence adduced herein that TD Bank knew of Wells Fargo's policy, but debited Appellant's accounts without further scrutiny, or that TD Bank has a similar ATM policy, a plausible argument could be made that TD Bank failed to exercise ordinary care in paying the item, and that its failure substantially contributed to the loss.[1] Absent ordinary care, 13 Pa.C.S. § 4406 provides for the allocation of the loss between the customer and the bank that is asserting the preclusion based on the extent of their respective failures to exercise ordinary care. *Id*. at § 4406(e). Although the Uniform

---

[1] Ordinary care is defined in Article 3 as

> observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged. In the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this division or Division 4 (relating to bank deposits and collections).

13 Pa.C.S. § 3103.

Commercial Code permits provisions such as § 4406 to be modified by agreement, the agreement "cannot disclaim the responsibility of a bank for its lack of good faith or failure to exercise ordinary care." UCC 4-103(a); 13 Pa.C.S. § 4103; N.J.S.A. 12A:4-103. I submit that, to the extent a deposit agreement operates to relieve the banks of liability for a lack of ordinary care, it is unenforceable.

The banking industry is founded on trust. It is my belief that banks that have failed to implement at least minimal safeguards against all improper or forged endorsements or other alterations at ATMs, not just those involving amounts in excess of $50,000, have failed to exercise ordinary care. Furthermore, a deposit agreement that effectively shifts all responsibility to the customer to detect and report fraud and forgeries, while concomitantly reducing the time in which the customer must do so in order to preserve any remedy, smacks of bad faith. In the proper case, I recommend that we examine whether such banking practices and deposit agreements are contrary to public policy.